# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MICHAEL VINCENT MONTAÑO,**

    **Plaintiff,**

    vs.                                                                                                                   Civ. No. 16-839 KK

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed December 12, 2016, in support of Plaintiff Michael Montano's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income benefits. On February 15, 2017, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). (Doc. 17.) The Commissioner filed a Response in opposition on April 13, 2017 (Doc. 20), and Plaintiff filed a Reply on May 3, 2017. (Doc. 23.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

## I. Background and Procedural Record

Claimant Michael Montaño ("Mr. Montaño") alleges that he became disabled on June 15, 2006,[2] at the age of sixteen,[3] because of chronic pain associated with an injured left knee.[4] (Tr.

---
[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 9, 10.)

204, 221.[5]) Mr. Montaño went to high school until the tenth grade, when he claims he dropped out due to his injury. (Tr. 350.) He later obtained a GED in 2005 and went on to earn his Associate's Degree in Paralegal Studies from Clovis Community College in 2011. (Tr. 42-43.) Mr. Montaño worked for brief periods of time between 2007 and 2014 as a retail store cashier and sales associate, a grocery store courtesy clerk, a church and restaurant server, and a casino valet.[6] (Tr. 207-18.)

On January 24, 2012, Mr. Montaño protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 168-173, 204.) Mr. Montaño's application was initially denied on July 18, 2013. (Tr. 75, 104-107.) It was denied again at reconsideration on January 6, 2014. (Tr. 103, 110-114.) On March 5, 2014, Mr. Montaño requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 117-19.) The ALJ conducted a hearing on January 21, 2015. (Tr. 38-63.) Mr. Montaño appeared via video teleconference at the hearing from Clovis, New Mexico, and was represented by Michael Armstrong. (*Id*.) The ALJ took testimony from Mr. Montaño. (Tr. 44-62.) An impartial vocational expert (VE), Kasey Suggs, appeared at the hearing, but did not testify. (*Id.*) On

---

[2] Mr. Montaño stated in his application an Alleged Onset Date ("AOD") of June 15, 2006. (Tr. 168, 204, 221, 248, 267.) The medical records, however, indicate that the alleged disabling accident described in Mr. Montaño's application occurred on July 30, 2006. (Tr. 296-301, 307, 308, 310.)

[3] Mr. Montaño applied for disability benefits seven years after the alleged onset date. (Tr. 168-171.)

[4] On July 30, 2006, Mr. Montaño was riding a bicycle when he was hit by a truck. (Tr. 296.) His left knee was injured in the accident and Mr. Montaño subsequently underwent an open reduction and internal fixation of a "depressed left lateral tibial plateau fracture" on August 9, 2006. (Tr. 311-13.) Mr. Montaño was followed by Orthopedic Surgeon R. Sann Gossum, M.D., of Northern New Mexico Orthopaedic Associates, from the time of his surgery until he was released from care on November 2, 2006. (Tr. 303.) At his final appointment, Mr. Montaño indicated he had no complaints. (*Id*.) On physical exam, Dr. Gossum noted Mr. Montaño had full range of motion of both knees, normal sensation and pulses, and ambulated without an antalgic gait. (*Id*.) Radiologic imaging demonstrated "excellent contour of his tibial plateau." (*Id.*)

[5] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on December 12, 2016.

[6] Mr. Montaño testified that he sought work as a paralegal, but to no avail. (Tr. 47.)

2

February 20, 2015, the ALJ issued an unfavorable decision. (Tr. 25-33.) On May 19, 2016, the Appeals Council issued its decision denying Mr. Montaño's request for review and upholding the ALJ's final decision. (Tr. 1-6.)

On July 22, 2016, Mr. Montaño timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of establishing a prima facie case of disability at

steps one through four. 20 C.F.R. § 416.920(a)(4)(i-iv); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant successfully meets that burden, the burden of proof shifts to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(v); *Grogan*, 399 F.3d at 1261.

### III. Analysis

The ALJ made his decision that Mr. Montaño was not disabled at step five of the sequential evaluation. He found that Mr. Montaño had the residual functional capacity to perform a full range of medium work as defined 20 C.F.R. § 416.967(c). Based on the RFC, and considering Mr. Montaño's age, education, and work experience, the ALJ concluded that Medical-Vocational Rule 203.28 directed a finding of "not disabled."

In support of his Motion, Mr. Montaño argues that the ALJ failed to explicitly state the weight he accorded examining State Agency medical consultant Dr. Roger Felix's opinion, and failed to give specific and legitimate reasons for rejecting Dr. Felix's opinion. (Doc. 17 at 10-15.) For the reasons discussed below, the Court finds that the ALJ applied the correct legal standard in evaluating Dr. Felix's opinion and that there is no reversible error.

### Roger Felix, M.D.

On April 27, 2013, Mr. Montaño presented to examining State Agency medical consultant Roger Felix, M.D., for a disability determination examination. (Tr. 329-31.) Mr. Montaño complained of left leg spasms, left face spasms, left arm spasms, and pain in his left lower extremity in general. (Tr. 329.) He reported to Dr. Felix that when he was sixteen years old, he was riding his bicycle when he was hit by a drunk driver. (*Id.*) His left knee was injured in the accident and he told Dr. Felix that the attending EMTs described his knee as being

4

"shredded to pieces." (*Id.*) Mr. Montaño also told Dr. Felix that the right side of his head hit the vehicle during the accident and that he lost consciousness for about fifteen minutes. (*Id.*) He reported that he did not remember most of the accident and "woke up in post anesthesia care after surgery on his knee." (*Id.*) Mr. Montaño told Dr. Felix that the accident left him functionally impaired and that he could stand for only two to five minutes, could walk for twenty feet with the use of a cane, could sit for one to two hours, and could lift five to ten pounds. (*Id.*)

Dr. Felix observed that Mr. Montaño walked with a very antalgic gait favoring his left lower extremity and that he did not flex his left hip at all. (Tr. 330.) He also observed that Mr. Montaño was stiff getting on and off the exam table and up and out of the chair. (*Id.*) On physical exam Dr. Felix noted that Mr. Montaño had limited left shoulder abduction with active range of motion, *i.e.,* 80 degrees, and greater abduction with passive range of motion, *i.e.,* 120 degrees. (*Id.*) Dr. Felix noted that it was difficult to tell how far Mr. Montaño could flex his left hip due to reported pain. (*Id.*) Mr. Montaño was able to flex his left knee to 40 degrees while squatting, but to 70 degrees on exam. (*Id.*) Similarly, Dr. Felix was able to produce greater flexion of Mr. Montaño's left ankle on exam than Mr. Montaño produced on his own. (*Id.*) Dr. Felix noted that Mr. Montaño was unable to walk on his heels or toes because he was unable to rise up on his left heel or left toes. (*Id.*)

Dr. Felix's impression was that Mr. Montaño had decreased range of motion in his left shoulder, left knee, and left ankle, and a "very antalgic, slow gait." (Tr. 330.) Dr. Felix opined that Mr. Montaño's general left-sided weakness suggested "a centrally mediated problem with the left side of his body, which could have been caused by the head trauma suffered in the accident." (*Id.*) Dr. Felix also opined that the decreased flexion in his shoulder and ankle may be due to muscle weakness, rather than a joint problem. (Tr. 330.) He opined that Mr. Montaño

"would be expected to have difficulty with squatting, stooping, bending, and almost any amount of standing and walking" and with "reaching overhead, and for carrying and lifting, especially heavy loads." (*Id.*)

### A. The Court Can Tell From the ALJ's Determination The Weight He Accorded Dr. Felix's Opinion

Mr. Montaño argues that the ALJ improperly failed to explicitly state the weight he accorded Dr. Felix's evaluation. (Doc. 17 at 11.) The ALJ's failure to state explicitly the weight he accorded Dr. Felix's opinion, however, is harmless error because the ALJ made clear to subsequent reviewers the weight he accorded to Dr. Felix's opinion, as he was required to do. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding ALJ's failure to explicitly state whether treating physician was entitled to controlling weight was harmless where ALJ adequately explained weight given); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (an ALJ's decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight). Here, the ALJ accorded great weight to nonexamining State Agency medical consultant Eileen M. Brady, M.D.'s opinion.[7] (Tr. 32.) In so doing, the ALJ expressly adopted Dr. Brady's explicit rejection of Dr. Felix's findings. (Tr. 31-32.) For example, the ALJ noted that Dr. Brady determined that Mr. Montaño's clinical presentation to Dr. Felix was not supported by the left knee radiology consultation report that indicated Mr. Montaño's fracture was well healed with no acute findings.[8] (Tr. 31.) The ALJ also noted that Dr. Brady indicated that

---

[7] On June 26, 2013, Dr. Brady reviewed the medical evidence record and assessed that Mr. Montaño had the residual functional capacity to perform a full range of medium work. (Tr. 84-85.) In addition to having the medical record evidence available for review, Dr. Brady also had the benefit of radiologic consultative reports obtained after Dr. Felix's consultative exam.

[8] The record supports this finding. On June 19, 2013, Mr. Montaño had radiologic studies of his left knee based on a reported history of "[l]eft knee injury, now has 2 screws causing pain and muscle spasms, constant dull ache and swelling." (Tr. 343.) The findings demonstrated "2 orthopedic long screws through the proximal left tibia entering

6

Mr. Montaño's reported functional limitations to Dr. Felix were not credible.[9] Finally, the ALJ noted that Dr. Brady concluded that Dr. Felix's statements were not supported. (Tr. 31.) For these reasons, the ALJ's decision is sufficiently specific to make clear to the Court that he rejected Dr. Felix's opinion. As such, the Court will not reverse on this ground. *Mays v. Colvin*, 739 F.3d 369, 575 (10th Cir. 2014).

    **B.**    **<u>The ALJ Provided Legitimate Reasons That Are Supported by Substantial Evidence In Rejecting State Agency Medical Consultant Dr. Roger Felix's Opinion</u>**

Mr. Montaño argues that the ALJ's reasons for rejecting Dr. Felix's opinion are neither adequate nor legitimate. (Doc. 17 at 13-15.) In support of his argument, Mr. Montaño asserts that the ALJ improperly referred to "treating source notes" when there was no treating source, and that the ALJ improperly "interjected his lay opinion into Dr. Felix's assessment" when he observed that Dr. Felix had found no evidence of atrophy during Mr. Montaño's physical exam. (*Id.*) The Court is not persuaded. As to the former argument, in referencing treating source notes, it is clear that the ALJ adequately evaluated the medical record evidence, which although not extensive, supported his statement that "there is no indication of an antalgic gait or stroke-

---

from the lateral side that appear to be in place with no fluid in the joint. Bones well mineralized, no fracture or acute finding[.]" (*Id.*) Radiologist Dr. Michael Rowley's impression was "2 orthopedic screws affixing an old completely healed proximal tibial fracture with no acute finding." (*Id.*)

[9] The record supports this finding. Dr. Brady correctly noted that Mr. Montaño's presentation to Dr. Felix was not consistent with the Field Officer observations at the time Mr. Montaño applied for disability three weeks' prior to seeing Dr. Felix; *i.e.,* on April 5, 2013, the Field Officer indicated that Mr. Montaño had no difficulties with sitting, standing, or walking. (Tr. 85, 205.) Dr. Brady correctly noted there were inconsistencies in Dr. Felix's exam with regard to active and passive range of motion. (Tr. 85, 330.) Dr. Brady correctly noted that radiologic studies of Mr. Montaño's left shoulder and ankle were normal and there was no history of any left shoulder injury at the time of the accident. (Tr. 85, 296-97, 336.) Dr. Brady correctly noted that there was no definite medically determinable impairment with regard to Dr. Felix's findings of left sided weakness and postulated neurologic disorder. (Tr. 85.) The Court further notes that parts of Mr. Montaño's reported history to Dr. Felix are not supported by the record evidence. For example, Mr. Montaño reported to Dr. Felix that he hit the right side of his head on the vehicle during the accident, yet the emergency department record on the date of the accident indicates there was *no evidence of head trauma*. (Tr. 296, 329.) Mr. Montaño also reported to Dr. Felix that he did not remember most of the accident and woke up in post anesthesia care after surgery on his knee, yet the emergency department record on the date of the accident indicates Mr. Montaño was alert on arrival and released on the same date with a referral to an orthopedic specialist. (Tr. 296-97, 329.) Mr. Montaño subsequently had surgery *ten days after* the date of the accident. (Tr. 311-13.)

like symptoms on the left side." (*See e.g.*, Tr. 303-305 (Northern New Mexico Orthopaedic Group post-accident/post-surgery treatment progress notes from September-November 2006 noting full range of motion in both knees and lower left extremity, negative anterior and posterior drawer, Lachman, varus, and valgus tests, no tenderness to palpitation, normal sensation and pulses in foot, ambulation without an antalgic gait, authorizing resumption of activities as tolerated, and releasing from care); Tr. 308 (finding neurologically intact); Tr. 310 (self-reporting negative stroke history); Tr. 324-327 (February 2012 emergency room treatment records noting limited range of motion in left knee and no evidence of (1) deficit in any other joint or muscle group, (2) neurological or ambulating deficits, (3) spasms or findings of limitation in back, right lower extremity, or bilateral upper extremities. Diagnosing chronic left knee pain); Tr. 333, 336-337 (May 2013 x-ray of left shoulder and ankle with no fracture, degenerative change or acute findings); Tr. 343, 345-346 (June 2013 X-rays of left knee showed old, completely healed, proximal tibial fracture with no acute findings); Tr. 449-57 (January 2015 medical records noting no mental deficits and no difficulty with ambulation). The Court can follow the ALJ's reasoning and can determine that he applied the correct legal standard in evaluating Dr. Felix's opinion in light of the contrary substantial evidence of record. As such, the ALJ's reference to prior medical treatment records as "treating source notes" does not undermine the ALJ's conclusions. "In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

As to the latter argument, Mr. Montaño cites *Schmidt v. Sullivan*, 914 F.2d 117, 118-19 (7th Cir. 1990), a case in which the court *affirmed* the ALJ's determination that the plaintiff was

not disabled, but cautioned subsequent reviewers against the temptation to "play doctor" when certain facts may lend themselves to a seemingly obvious but imprecise conclusion. *Id.* In that case, the plaintiff had an alleged disabling heart condition yet played handball for forty minutes every week, a fact that weighed heavily with the ALJ. *Id.* His treating physician, however, presented evidence that it was plaintiff's reaction to *psychological* stress that was responsible for exacerbating his heart condition. *Id.* The Court, therefore, essentially admonished reviewers to refrain from hastily displacing treating physician opinion with lay opinion in the face of what may initially appear to be contrary evidence. *Id.* That is not the case here. The ALJ did not dispute the existence of Mr. Montaño's status post left knee fracture, or that it could be expected to cause some functional limitations. (Tr. 28, 30.) Instead, in *weighing* Dr. Felix's opinion, the ALJ explained that it was not supported because, *inter alia*, on the one hand Dr. Felix assessed certain limitations based on what "could be" muscle weakness, but on the other hand he did not indicate any evidence of atrophy that would support muscle weakness or would support Mr. Montaño's alleged persistent disuse of his left lower extremity due to pain.[10] Thus, the ALJ's observation demonstrates an inconsistency in Dr. Felix's finding and is a legitimate basis for discounting his opinion. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)).

Mr. Montaño's arguments aside, the ALJ provided specific and legitimate reasons for rejecting Dr. Hall's assessments that are supported by substantial evidence. "An ALJ must [] consider a series of specific factors in determining what weight to give any medical opinion."

---

[10] Further, Dr. Felix relied on Mr. Montaño's reported history of head trauma to support his finding of muscle weakness. (Tr. 330.) However, Mr. Montaño's reported history of head trauma at the time of the accident is not supported by the record. (Tr. 296.)

*Hamlin*, 365 F.3d at 1215 (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[11] An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion. *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007). The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005). Here, as discussed above, the ALJ accorded great weight to Dr. Brady's opinion and adopted her reasons for rejecting Dr. Felix's opinion.[12] (Tr. 31.) The ALJ also similarly noted the benign radiologic studies related to Mr. Montaño's shoulder, knee, and ankle. (Tr. 31.) In addition, the ALJ explained that Dr. Felix's examination was "somewhat vulnerable to subjective findings."[13] (Tr. 31.) The ALJ also identified other inconsistencies between Dr. Felix's findings and the medical record evidence. For example, the ALJ noted that on February 3, 2012, Mr. Montaño presented to Plains Regional Medical Group complaining of left knee pain. (Tr. 30.) The ALJ explained that the physical exam indicated left knee joint pain with limited range of motion, but that Mr. Montaño ambulated without deficits, and the exam was otherwise normal with no evidence of other joint, muscle, or neurologic deficits. (*Id.*) The record supports this finding. (Tr. 326-27.) The ALJ also noted that on January 2, 2015, Mr. Montaño presented to Presbyterian Medical Center complaining of a cough, and the treatment notes indicated he had

---

[11] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

[12] *See* fn. 9, *supra*.

[13] Dr. Felix did not indicate in his report that he reviewed any medical records, but instead relied solely on Mr. Montaño's reported history, parts of which were not supported by the record. *See* fn. 9, *supra*. The ALJ also determined elsewhere in his determination that Mr. Montaño's allegations of pain and dysfunction related to his medically determinable impairment were not credible to the extent alleged. (Tr. 30.) *See* SSR 16-3p, 2016 WL 1119029, at *6 (a claimant's statements about the intensity, persistence, and limiting effects of symptoms are evaluated based on their consistency with objective medical evidence and other evidence). Mr. Montaño raised no objection to the ALJ's evaluation of his statements regarding the intensity, persistence, and limiting effects of his symptoms.

no difficulty with ambulation. (Tr. 31-32.) The record supports this finding. (Tr. 451.) *See* 20 C.F.R. § 416.927(c)(3) and (4) (generally more weight will be given to medical source opinions based on whether they are supported by relevant evidence, particularly medical signs and laboratory findings, and whether their opinions are consistent with the record as a whole).

For the foregoing reasons, the ALJ provided specific and legitimate reasons for rejecting Dr. Felix's opinion and there is no reversible error as to this issue.

## IV. Conclusion

For the reasons stated above, Mr. Montaño's Motion to Reverse or Remand for Rehearing is **DENIED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**
**Presiding by Consent**